IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>MANITOU CONSTRUCTION, INC. and THOMAS A. NORT,<br><br>Defendant. | CIVIL ACTION NO.<br><br>1:14-CV-0401-CC |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment [Doc. No. 27]. Defendants Manitou Construction, Inc. and Thomas A. Nort (collectively referred to herein as "Defendants") have not opposed the Motion for Summary Judgment. For the foregoing reasons, the Court grants the Motion.

**I.     BACKGROUND**

Defendant Thomas A. Nort ("Nort") formed Defendant Manitou Construction, Inc. ("Manitou") in 2011 to do work in North Dakota. Manitou entered into five government contracts, and Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") issued five sets of payment and performance bonds.

Nort was the president of Manitou, and Nort and Manitou agreed to indemnify Philadelphia for all of its losses and costs. The General Indemnity Agreement (the "Indemnity Agreement") provides at paragraph 3 that:

> Indemnitors agree to indemnify and hold harmless Surety from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement.... In the event of payments by Surety,

> Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors.

(Indemnity Agreement [Doc. No. 27-3] ¶ 3.)

Manitou failed to pay its subcontractors and suppliers, and the subcontractors and suppliers began making substantial demands on Philadelphia under the payment bonds. Nort, both individually and on behalf of Manitou, admitted that Manitou could not pay its subcontractors and suppliers. Nort, on behalf of Manitou, eventually signed letters stating that the company also did not have the financial resources to complete projects or pay bills.

Philadelphia began receiving claims from subcontractors and suppliers, and Philadelphia contacted Nort to get input from him as to whether those claims were valid. Nort acknowledged during his deposition that Philadelphia had reached out to him when it received claims and had asked for his input and review. However, Nort did not respond with any information about the validity of the claims. Nort testified that he reviewed some of them but eventually realized he did not have any information to state whether any of the claims were legitimate. Philadelphia did its best to investigate the claims and to pay no more than what was owed. Nort, on behalf of Manitou, testified he was not aware of a single claim Philadelphia should not have paid.

The Indemnity Agreement required Nort to deposit collateral to protect Philadelphia from losses. When Philadelphia received these claims and before Philadelphia began paying them, Philadelphia demanded that Nort provide Philadelphia with collateral as required by the Indemnity Agreement. Nort acknowledged that he received the demand for collateral and did not provide any collateral.

Philadelphia reviewed all of the claims and data that it received from Manitou's subcontractors and suppliers. After reviewing these claims, Philadelphia

paid subcontractors and suppliers $1,253,447,78. Philadelphia had a construction consultant assist in getting new contractors to complete the unfinished projects. Philadelphia hired Robert Hillman of Professional Construction Consulting, Inc. to help arrange for the completion of the projects. Hillman is a professional engineer who received his degree at the University of North Dakota, and he has significant experience assisting sureties in arranging for completion of projects. Philadelphia also hired John V. Burch of the law firm of Bovis, Kyle, Burch & Medlin, LLC to provide legal advice in connection with claims made and to prosecute this legal action.

Philadelphia has incurred losses for bond claims and costs totaling $1,311,302.82. Most of its losses were for claims paid to subcontractors and suppliers on the payment bonds. However, Philadelphia had to pay contractors to complete three projects, and it ultimately was paid some contract funds. The accounting for these losses and recovery is the following:

| | |
|---|---|
| Paid to subcontractors and suppliers | $1,253,447.78 |
| Paid to completion contractors | $ 587,946.88 |
| Paid for professional consulting | $ 25,787.50 |
| Paid for attorney's fees | $ 48,548.55 |
| Total payments | $1,915,730.71 |
| Contract funds paid by owners | $ (604,427.89) |
| **Total loss** | **$1,311,302.82** |

The declaration of Philadelphia's bond claim representative, Kenneth B. Huff, sets out an itemization of the amounts paid to each subcontractor, supplier, Philadelphia's construction consultant and attorney.

Nort admitted, on behalf of Manitou and himself, that he did not know of any facts to support the affirmative defenses raised in defensive pleadings. Indeed, Nort acknowledged that he based some of his defenses on speculation.

- 3 -

## II. STANDARD OF REVIEW

Summary judgment must be granted when the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In seeking summary judgment, the moving party bears the initial responsibility to demonstrate that there is no genuine issue as to any material fact and that summary judgment is appropriate. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Allen v. Bd. of Public Educ., 495 F.3d 1306, 1313 (11th Cir. 2007). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

When evaluating the merits of a motion for summary judgment, the court must view all evidence and factual inferences raised by the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts concerning the facts in favor of the non-moving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). The court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

A fact is material if proof of its existence or nonexistence would affect the outcome of the case under controlling substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Additionally, an issue of fact is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. An issue of fact is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." Id. at 249-250. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." Id. at 247-48 (emphasis in original).

Where a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Even when a summary judgment motion is entirely unopposed, the district court still must consider the merits of the motion. See Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1998). Accordingly, the court must review the evidentiary materials submitted in support of the motion and "determine whether they establish the absence of a genuine issue of material fact." U.S. v. One Piece of Real Prop., 363 F.3d 1099, 1102 (11th Cir. 2004) (quoting Jaroma v. Massey, 872 F.2d 17, 20 (1st Cir. 1989)).

## III. ANALYSIS

Philadelphia has brought this action against Defendants to recover losses incurred on the payment and performance bonds that Philadelphia issued on behalf of Manitou. Philadelphia presently contends it is entitled to summary judgment based upon the plain terms of the Indemnity Agreement and the evidence of record. The Court agrees that summary judgment should be granted.

### A. Validity and Enforceability of the Indemnity Agreement

Georgia courts have "consistently . . . upheld the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds." Anderson v. U.S. Fidelity & Guar. Co., 267 Ga. App. 624, 627, 600 S.E.2d 712 (2004) (citations and punctuation omitted); see also Cagle Constr., LLC v. Travelers Indem. Co., 305 Ga. App. 666, 668-69, 700 S.E.2d 658 (2010). Under Georgia law, the ordinary rules of contract construction to apply to indemnity agreements. Anderson, 267 Ga. App. at 627. "No construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." Id.

In this case, the undisputed facts show that Nort signed, both in his individual

capacity and as president of Manitou, the Indemnity Agreement with Philadelphia. According to the plain language of the Indemnity Agreement, Defendants agreed to indemnify and hold Philadelphia harmless from any loss under the bonds and to indemnify Philadelphia for all its expenses and costs and fees incurred in enforcing the Indemnity Agreement. The Court finds that the Indemnity Agreement is definite and unambiguous and therefore binding and enforceable.

B.     Liability and Damages

The Court further finds that Philadelphia has established its prima facie case for indemnification. The Indemnity Agreement provides: "In the event of payments by the Surety, Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to the Surety in any demand, claim or suit by Surety against Indemnitors. (Indemnity Agreement ¶ 3.) Both state and federal courts in Georgia have found similar language to be clear and unambiguous and have held indemnitors liable for damages based on affidavits and attached summaries supplied to establish the fact and amount of damages. See, e.g., Travelers Cas. & Sur. Co. of Am. v. Winmark, 518 F. App'x 899, 903 (11th Cir. 2013); Reliance Ins. Co. v. Romine, 707 F. Supp. 550, 552 (S.D. Ga. 1989); Cagle Constr., 305 Ga. App. at 668-69; Anderson, 267 Ga. App. at 627-28.

Here, the undisputed evidence of record, including the declaration of Philadelphia's bond claim representative and the documents attached thereto, reflects that Manitou entered into five construction contracts bonded by Philadelphia. Manitou failed to pay what it owed to its subcontractors and suppliers on the contracts and failed to complete three of the projects. Moreover, upon demand by the subcontractors and suppliers for payment, Philadelphia has paid $1,253,447.78 to these subcontractors and suppliers. Further, Philadelphia has paid $613,734.38 for professional consulting services and to complete the projects that Manitou failed to complete. Nort has agreed that there were no payments made to

- 6 -

anyone that were not owed, that Manitou is insolvent, that Manitou voluntarily defaulted on the projects, and that Manitou could not complete bonded work. Insofar as Defendants have not indemnified Philadelphia as promised, Philadelphia is entitled to summary judgment in the amount of the losses and expenses referenced above.

### C. Attorney's Fees

Defendants also are liable for Philadelphia's attorney's fees and other expenses incurred as a result of having issued bonds on behalf of Manitou and having had to enforce the covenants of the Indemnity Agreement. "Generally an award of attorney fees is not available unless supported by statute or contract." Abrams v. Putney, 304 Ga. App. 626, 629, 697 S.E.2d 269 (2010) (quoting Padilla v. Padilla, 282 Ga. 273, 274, 646 S.E.2d 672 (2007)). When provided for in the indemnification agreements, Georgia courts have specifically upheld provisions requiring the indemnitor to reimburse the surety for attorney's fees. See, e.g., Anderson, 267 Ga. App. at 628; M-Pax, Inc. v. Dependable Ins. Co., 176 Ga. App. 93, 94-95, 335 S.E.2d 591 (1995); United Rental Sys., Inc. v. Safeco Ins. Co., 156 Ga. App. 63, 67-68, 273 S.E.2d 868 (1980); Morrison v. Fidelity & Deposit Co. of Md., 150 Ga. 54, 102 S.E. 354 (1920).

With respect to attorney's fees, the agreement between Philadelphia and Defendants provides that the surety is entitled to recover any losses sustained or incurred in enforcing any of the covenants or conditions of the Indemnity Agreement. Philadelphia has attached to the Declaration of Kenneth B. Huff a summary of payments made to Bovis, Kyle, Burch & Medlin, LLC totaling $48,548.55. Having introduced prima facie evidence of payment of these attorney's fees and expenses, which Defendants have not rebutted, Philadelphia is entitled to recover this amount of attorney's fees and expenses under the Indemnity Agreement. See Winmark Homes, Inc., 518 F. App'x at 903 (affirming award of attorney's fees to surety because surety presented prima facie evidence of its loss

and because the indemnitors did not rebut the evidence).

## IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment [Doc. No. 27].

The Court **ORDERS** Defendants Manitou Construction Inc. and Thomas A. Nort to pay Plaintiff damages in the amount of $1,262,754.27 and attorney's fees and expenses in the amount of $48,548.55.

The Clerk of Court is **DIRECTED** to enter an appropriate judgment.

SO ORDERED this 25th day of June, 2015.

*s/  CLARENCE COOPER*

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE